OPINION
In this case, Tammy Crow appeals from a trial court order granting permanent custody of her child, Dalton Dale Crow, to the Darke County Children Services Unit (CSU). In support of her appeal, Mrs. Crow raises the following single assignment of error:
 "I. The Common Pleas Court of Darke County erred in granting permanent custody of Dalton Dale Crow to Children's Services because Children's Services failed to prove at the adjudicatory hearing by clear and convincing evidence that Dalton Dale Crow was a dependent child pursuant to Revised Code Section 2151.04(D)."
After reviewing the record and applicable law, we find the assignment of error without merit. As a result, the judgment of the trial court will be affirmed.
 I
The following facts have been gleaned from the record in this case and from our opinion in a prior case between the parties, i.e., In re Crow
(Jan. 22, 2001), Darke App. Nos. 1521, 1522, 2001 WL 62895. According to the record, Appellant, Tammy Crow (Tammy) has been involved with CSU since March 13, 1998. At that time, CSU requested temporary custody of Daniel Crow, Jr. and Ciara Crow, based on allegations that Daniel had sustained severe physical injuries as the result of being shaken. Additionally, Ciara suffered from cerebral palsy, was developmentally delayed, and had various other medical problems. When the original complaint was filed, Daniel Jr. was about two months old, and Ciara was about two and a half years of age. CSU alleged in the complaint that Daniel, Jr. had been hospitalized, that x-rays showed numerous healing fractures and chronic subdural hematomas, and that his injuries appeared to be non-accidental.
Unfortunately, Daniel Jr. remains in a permanent vegetative state, and the circumstances leading to his injuries have never been uncovered. During the year and a half after the original complaint was filed, several hearings were held on the status of the case plan and reunification efforts. Under the case plan, both Tammy and her husband, Daniel, Sr., were to attend and complete psychological assessments, anger management training, and individual and marital counseling. However, they did not successfully complete these requirements.
Eventually, on January 5, 2000, Tammy agreed to place Daniel, Jr. in a planned permanent living arrangement with CSU. On the same date, Tammy was given unsupervised visitation (but not overnight) with Ciara pending a further hearing. The court also ordered Tammy not to have personal or telephone contact with Daniel, Sr. until further order of the court. However, Tammy violated the no contact order shortly after it was filed, and unsupervised visitation was terminated.
Tammy was pregnant with Dalton during the custody proceedings involving Daniel Jr. and Ciara. When Tammy gave birth to Dalton on January 28, 2000, CSU immediately obtained ex parte temporary custody. Three days later, CSU filed a complaint seeking permanent custody of Dalton. In the complaint, CSU alleged that Dalton was a dependent child under R.C.2151.04(D), and that Tammy had failed to comply with an order not to have contact with Daniel, Sr. According to CSU, the circumstances of Daniel Jr.'s abuse and injury had not been resolved, and Dalton was at risk for injury if he resided in the same household in which a sibling had been found to be abused.
After a hearing, CSU was awarded temporary custody of Dalton. Genetic testing was also ordered, due to issues about paternity. The test results indicated a 99.97% probability that Kevin Grimes was Dalton's father and a 0% chance that the father was Daniel, Sr. Based on this new information, CSU amended the case plan. No plans for reunification were included, however, since CSU had asked for permanent custody at the outset.
All the cases involving the Crow children have been heard and decided by the same juvenile judge. Beginning on May 1, 2000, the judge held a three day trial concerning the permanent custody requests for Daniel, Jr. and Ciara. At this hearing, Tammy again agreed to place Daniel, Jr. in a permanent planned living arrangement. Evidence was then taken concerning Ciara's needs and the efforts of Tammy and Daniel, Sr. in connection with the case plan. Based on this evidence, the judge found that both parents had failed to substantially comply with case plan requirements. As a result, the judge awarded CSU permanent custody of Ciara. An entry to that effect was filed on June 14, 2000, and Tammy timely appealed to our court.
In the meantime, Dalton's case was progressing. On June 21, 2000, the trial court held an adjudicatory hearing concerning Dalton, but continued the hearing pending an appellate ruling in Ciara's case. The adjudicatory hearing was then resumed on October 11, 2000. Although the hearing was not recorded, the parties have filed an agreed statement of the evidence presented at the hearing. The trial judge has also approved the statement, pursuant to App.R. 9(D).
Both Tammy and the natural father, Kevin Grimes, were served with notice of the adjudicatory hearing. Tammy appeared and was represented by counsel, but Grimes did not appear. At the hearing, certified copies of court pleadings for Daniel, Jr. and Ciara were admitted into evidence. Kim Bohler, the CSU social worker, also testified. Bohler indicated that she had been involved with the family since September 1, 1999, and had filed the complaint alleging that Dalton was a dependent child. Additionally, Bohler said that although the circumstances of Daniel Jr's abuse had never been ascertained, Dalton was at risk of being abused because his half-brother was a victim of Shaken Baby Syndrome and was currently in a vegetative state.
According to Bohler, neither parent had substantially complied with case plans and court orders. Consequently, CSU had obtained permanent custody of Ciara and the right to make planned permanent living arrangements for Daniel, Jr.
Bohler did indicate that Tammy was filing for a divorce from Daniel, Sr. However, Bohler said she was concerned because Tammy and Daniel, Sr. still maintained contact with each other. Bohler also testified about incidents of anger on Tammy's part, and threats of violence Tammy had made against CSU, Bohler, and the court after CSU was given permanent custody of Ciara.
Tammy was the other witness at the adjudicatory hearing. She denied having contact with Daniel, Sr., but did admit that her parents' address was also Daniel Sr.'s mailing address.
Following the hearing, the trial court filed an entry on February 2, 2001, finding Dalton a dependent child. The court then ordered that Dalton would remain in the temporary custody of the CSU. Finally, the court indicated that a dispositional hearing would be held as soon as possible after an appellate decision was filed in Ciara's case.
We affirmed the permanent custody award for Ciara shortly before the adjudicatory decision on Dalton was filed, but the trial court was probably unaware of that fact. See Crow (Jan. 22, 2001), Darke App. Nos. 1521, 1522, 2001 WL 62895. In our opinion, we noted that competent, credible evidence supported the permanent custody award. 2001 WL 62895, *7. After our decision was issued, the trial court then scheduled a dispositional hearing on Dalton for May 8-9, 2001. However, the hearing was not actually held until August 29, 2001, because Tammy's original attorney had withdrawn from the case.
At the August dispositional hearing, Tammy appeared with appointed counsel. The natural father, Grimes, also appeared and agreed to give permanent custody to CSU. The court then heard evidence from the following people: 1) Dalton's foster mother; 2) an acquaintance of Tammy (who testified about Tammy's anger problems, physical abuse of the acquaintance's child, and threats Tammy made against CSU and the court); 3) the putative father of another child with whom Tammy was pregnant at the time of the August, 2001 hearing; 4) a volunteer worker at the CASA program; 5) two CSU caseworkers; 6) an outpatient therapist who saw Tammy from February 2000 through May, 2001; 7) a CSU unit supervisor; 8) a child support investigator; and 9) Tammy. After hearing the evidence, the court filed an entry on October 23, 2001, granting permanent custody of Dalton to CSU.
In the entry, the court discussed the testimony in some detail. Among other things, the court noted that Tammy had admitted living again with Daniel, Sr. Tammy and Daniel, Sr. had also been seen together on various occasions by witnesses. The court further found that Tammy was not credible when she denied being involved with Daniel Sr. Based on the abuse to Daniel, Jr., the award of permanent custody of Ciara, and Tammy's failure to remedy the problems that caused Dalton's removal, including her own anger and violence management, the trial court awarded permanent custody of Dalton to CSU.
As we said, Tammy now appeals, raising error only with regard to the finding at the adjudicatory hearing that Dalton was a dependent child under R.C. 2151.04(D). Tammy's argument in this regard is that she was divorced and was not involved in a relationship with Daniel, Sr. In addition, Daniel, Sr. was not even Dalton's father. Tammy also claims there is no evidence that she was the abuser and committed any act that caused Ciara or Daniel, Jr. to be declared dependent. After reviewing the record, we must disagree.
As pertinent to this case, a dependent child is any child:
"[t]o whom both of the following apply:
 "(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 "(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household." R.C. 2151.04(D).
The court's findings at the adjudicatory hearing are to be based on clear and convincing evidence. R.C. 2151.35(A)(1). "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus. According to the Ohio Supreme Court:
 "[w]here the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. * * * However, it is also firmly established that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court. An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge." State v. Schiebel (1990), 55 Ohio St.3d 71, 75.
After reviewing the record, we find that the trial judge had sufficient evidence to satisfy the requirement that the dependency finding be based on clear and convincing evidence. Contrary to Tammy's claims, the record contained evidence of her continued relationship with Daniel Sr. Relying only on the evidence presented at the October 11, 2000 adjudicatory hearing, we note that the caseworker testified that she had concerns about the fact that Daniel, Sr. and Tammy were still maintaining contact with each other. At the time, Daniel was living with Tammy's parents when he was in town (his job required him to travel). Tammy did not deny this. In fact, Tammy admitted that Daniel's mailing address was her parent's address.
Although Tammy denied having contact with Daniel, Sr., the trial court clearly did not believe her. Since the trial judge was in a better position to judge credibility, we defer to his assessment. See, e.g.,Jackson v. Jackson (2000), 137 Ohio App.3d 782, 797.
As an additional matter, even if Tammy and Daniel, Sr., had not continued to be involved, serious questions were raised about Tammy's problems with anger. Again, confining our analysis solely to the facts elicited in October, 2000, the CSU caseworker testified about incidents of anger that Tammy displayed, including threats of violence against the caseworker, CSU, and the court. Although Tammy contends that no evidence was presented to indicate that she committed any act that allowed Daniel, Jr. or Ciara to become dependent, we do not agree. First of all, the truth about the circumstances surrounding the severe abuse to Daniel, Jr., was never discovered. Although there are implications in the record that Daniel, Sr., may have been the abuser, one could also infer that Tammy may have been responsible. Furthermore, at the time of the October, 2000 adjudicatory hearing, Tammy had already lost permanent custody of two children to CSU, due to her failure to substantially comply with the requirements of the case plan for Daniel, Jr. and Ciara. Accordingly, within the meaning of R.C. 2151.04(D), Dalton was dependent, since he was "residing in a household in which a parent * * * committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child." Dalton was also in danger of being abused or neglected "because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child."
We note that the August, 2001 dispositional hearing contains additional references to Tammy and Daniel Sr.'s continued relationship, even in the week before the hearing. The transcript also contains evidence of Tammy's physical violence toward others and continued anger problems. However, we have disregarded that evidence, since the only issue being appealed is the determination of dependency, which was the subject of the October 11, 2000 hearing. If we were to consider the evidence from the August, 2001 dispositional hearing, we would only find that it strengthened the basis for a finding of dependency.
Based on the preceding analysis, the single assignment of error is without merit. Accordingly, the judgment of the trial court, awarding permanent custody of Dalton Dale Crow to CSU, is affirmed.
WOLFF, P.J., and YOUNG, J., concur.